UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

‾‾‾‾‾

LINDSEY GOLLIDAY and )
NICOLA GOLLIDAY, )
 )
        Plaintiffs, )   Case No. 1:10-cv-532
 )
v. )   Honorable Robert Holmes Bell
 )
CHASE HOME FINANCE, LLC, )   **REPORT AND RECOMMENDATION**
 )
        Defendants. )
_____ )

      This civil action was initiated by plaintiffs in the Berrien County Circuit Court and removed to this court on the basis of federal-question jurisdiction. The *pro se* plaintiffs, Lindsey and Nicola Golliday, are owners of real property located in Benton Harbor, Michigan. On November 25, 2008, they executed a promissory note in the amount of $189,499.00 in favor of Gateway Mortgage Group, LLC ("Gateway"). The note was secured by a mortgage on plaintiffs' Benton Harbor real estate, given to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for the lender, Gateway, and all its successors and assigns. The debt and security were assigned to JPMorgan Chase Bank, N.A. ("JPMorgan"), effective January 1, 2009, and payments were to be to JPMorgan's wholly owned servicing subsidiary, defendant Chase Home Finance, LLC ("Chase"). After plaintiffs defaulted on the note, defendant Trott & Trott, P.C. (a law firm) began proceedings on behalf of Chase to foreclose the mortgage by advertisement, pursuant to Michigan statute.

      Plaintiffs filed this lawsuit in the Berrien County Circuit Court on May 6, 2010, naming Chase, Trott & Trott, P.C. ("Trott & Trott"), and Attorney Jeanne M. Kivi as defendants.

On June 3, 2010, defendants removed the action to this court.  Chase is the only remaining defendant.[1]  Plaintiffs allege that Chase violated their rights under the Truth-in-Lending Act and the Real Estate Settlement Procedures Act.  Further, they allege that Chase violated a forbearance agreement.  Plaintiffs seek damages, "dismissal" of the foreclosure sale that had been scheduled for May 13, 2010, and quiet title to the mortgaged property.

After the close of discovery, the parties filed cross-motions for summary judgment. I conducted a hearing on the motions on June 29, 2011 (docket # 70), pursuant to Judge Bell's order of reference (docket # 3).  The motions are ready for decision.  For the reasons set forth herein, I recommend that plaintiffs' request for an injunction against the May 13, 2010 foreclosure sale be dismissed as moot.  I further recommend that plaintiffs' motion for summary judgment (docket # 57) be denied.  I further recommend that defendant's motion for summary judgment (docket # 60) be granted and that a final judgment be entered in Chase's favor on all plaintiffs' claims.

## **Applicable Standards**

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits.  *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005).  "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005)(quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).  "The standard of review for cross-

---

[1]On December 9, 2010, the court dismissed all plaintiff's claims against Attorney Kivi. (docket # 50).  On January 5, 2011, the court adopted a report and recommendation over plaintiffs' objections, granted Trott & Trott's motion for summary judgment, and entered a partial judgment in Trott & Trott's favor on all plaintiffs' claims.  (docket # 56).

motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.[2] FED. R. CIV. P. 56(a); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the

---

[2]"The standard for granting summary judgment remains unchanged" under the amendments to Rule 56 that went into effect on December 1, 2010. *See* FED. R. CIV. P. 56 advisory committee note (2010 amendments).

mere allegations of her pleadings.  FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  The moving party without the burden of proof needs only show that the opponent cannot sustain her burden at trial.  "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- [her] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules:  Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same).  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier

of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).  The higher summary judgment standard

applies to plaintiffs' motion for summary judgment.

## Proposed Findings of Fact

The relevant facts leading up to this dispute are principally established by

documentary evidence.  The parties have filed numerous, duplicative copies of the relevant

documents.  (*See, e.g.*, Attachments to docket #s 28, 41, 55, 57, 60, 61, 62, and 63).  The

documentary and other admissible evidence of record discloses the following, with all *reasonable*

inference drawn in favor of plaintiffs.

Plaintiffs are husband and wife residing in Berrien County, Michigan.  In connection

with their purchase of real property located at 2320 Revelation Ave., Benton Harbor, Michigan,

plaintiffs entered into a loan transaction with lender Gateway on November 25, 2008, signing a

promissory note and mortgage agreement.  This mortgage was created as security for a loan of

$189,499.00, the proceeds of which were used by plaintiffs to buy the real property, a residence.  The

mortgage was granted in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as

nominee for the lender, Gateway, and all of lender's successors and assigns.  (docket # 57-1, Exs.

A and B, ID#s 652-65; docket # 60-2, Exs. A and B, ID#s 773- 88).[3]  Plaintiffs signed, before the

---

[3] "In 1993, the MERS system was created by several large participants in the real estate
mortgage industry to track ownership interests in residential mortgages.  Mortgage lenders and other
entities, known as MERS members, subscribe to the MERS system and pay annual fees for the
electronic processing and tracking of ownership and transfers of mortgages.  Members contractually
agree to appoint MERS to act as their common agent on all mortgages they register in the MERS
system.

The initial MERS mortgage is recorded in the County Clerk's office with 'Mortgage
Electronic Registration Systems, Inc.' named as the lender's nominee or mortgagee of record on the
instrument.  During the lifetime of the mortgage, the beneficial ownership interest or servicing rights
may be transferred among MERS members (MERS assignments), but these assignments are not

closing process was complete, a "Servicing Disclosure Statement" which alerted them to the fact that Gateway did not service mortgage loans and intended to sell or transfer the servicing of the loan to another party.  (docket # 60-2, Ex. C, ID# 791).

On December 29, 2008, plaintiffs received notification that the mortgage loan had been sold to JPMorgan Chase Bank, N.A. ("JPMorgan"), who was the new creditor of their loan[4], and that all payments after January 1, 2009 were to be paid to Chase Home Finance, LLC ("Chase"), a wholly owned servicing subsidiary of JPMorgan.  (docket # 1-3, A2, ID# 22).  Gateway transferred the original note and mortgage to its bailee and agent, American Southwest Mortgage Company ("ASMC"), pending the conclusion of the loan's purchase.  (docket # 60-2, Ex. G, ID# 804).  The sale was finalized, and the original note and mortgage were received by Chase from ASMC.  (docket # 60-2, Ex. H, Reardon Aff. ¶ 4, ID# 807).  An allonge to the note was executed, endorsing the note to JPMorgan.  (docket # 57-4, ID# 708).  The sale of plaintiffs' note was finalized on or around January 13, 2009.  (Reardon Aff. ¶ 3, ID# 807).

Plaintiffs apparently made their payments to Chase for nine months without comment or incident until October 2009, when payments ceased.  Instead of making payments, plaintiffs sent Chase a lengthy document labeled "Qualified Written Request, Complaint, Dispute of Debt and

---

publicly recorded; instead they are tracked electronically in MERS's private system.  In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage." *Merscorp, Inc. v. Romaine,* 861 N.E.2d 81, 83 (N.Y. 2006) (footnotes omitted).

[4] Defendant has provided documentation showing that plaintiffs were aware as early as November 25, 2008, the date of closing, that their note would be sold to JPMorgan. (docket # 60-2, Ex. D, ID# 793).  Plaintiffs dispute this.  December 29,  2008, is the earliest agreed-upon date by which plaintiffs received  notice of the transfer and is therefore adopted for present purposes.

Validation of Debt Letter, TILA Request," dated October 19, 2009.  (docket # 1-3, Ex. A2, ID#s 23-42).  This letter explains that its purpose was:

> to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

(*Id*. at ID# 23).  This passage is followed by an amorphous list of concerns:

> I am very concerned.  With all the news lately regarding stories of predatory lending, you have left me with the feeling that there is something you are trying to hide.  I worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected my credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

(*Id*.).  This list of concerns, specifying no fault on the part of Chase, is followed by an ultimatum:

> I hereby demand absolute 1st hand evidence from you of the original and uncertificated or certificated security regarding account # [].  In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one.

> I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well.  Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe.

(*Id*. at ID#s 23-24).

The letter continues with a litany of further demands, far too numerous to be touched upon, ranging from demands for answers to various interrogatories to requests for production of considerable quantities of documents.  Plaintiff's RESPA request ends with the warning:

> When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as **Chase Home Finance**'s judgment and consent/agreement by means of silence with any and all claims and/or violations herein stated in the default provisions or any other law.

> Power of Attorney: When **Chase Home Finance** fails by not rebutting any part of this RESPA REQUEST **Chase Home Finance** agrees with granting unto **Lindsey & Nicola Golliday's (husband and wife)** unlimited Power of Attorney and any and all full authorization in signing and endorsing **Chase Home Finance**'s name upon any instruments in satisfaction of the obligation of this RESPA REQUEST/Agreement or any agreement arising from this agreement. . . . Consent and agreement with this Power of Attorney by **Chase Home Finance** waives any and all claims of **Lindsey & Nicola Golliday (husband and wife)**, and/or defenses and remains in effect until the satisfaction of all obligations by **Chase Home Finance** have been satisfied.

(*Id*. at ID# 41-42).

Chase responded with a letter dated January 29, 2010, which answered most of plaintiffs' questions in brief or by way of referral to sources, and included some documentation. (Def. Brief, docket # 60-3, Ex. L, ID#s 836-838).  Plaintiffs, unsatisfied with defendant's response, wrote a letter dated February 22, 2010 (docket # 1-3, A2, ID#s 45-46) which, among other things, demanded money from Chase:

> Therefore, because you have not provided us with the information we have been requesting since November 9, 2009, we now have reason to believe that you don't have the promissory note and never did!  If so, Chase Home Finance has been stealing money from us since our mortgage transferred from Gateway Mortgage Group, LLC back on January 1, 2009 and we want all of our money back from you!
>
> * * *
>
> Again, our original request to rescind or cancel this loan was requested because of the mistakes on our loan. . . .  And again, each violation of our loan constitutes for many different penalties that Chase Home Finance/Gateway Mortgage Group, LLC will have to pay.

(*Id*. at ID# 44-45).   Plaintiffs made no payments during this period of back-and-forth correspondence.  In March 2010, defendant referred the matter to Trott & Trott to commence foreclosure proceedings.  MERS assigned its interest to Chase on March 24, 2010, which was recorded on April 19, 2010.  (docket # 60-3, Ex. M, ID# 840).

-8-

At this point, there was an attempt to negotiate a forbearance agreement. This process went as far as Chase's March 20, 2010 offer to enter into a forbearance agreement. (docket # 60-3, Ex. N, ID# 842). Chase's letter conveying the offer included the following notice regarding the limited duration of the offer and the specific means of expressing acceptance:

> **Please note the Forbearance Plan will only be valid if payment and the signed Agreement are both received by the due date provided in the enclosed Agreement.** If the signed agreement and/or payment are not received by the due date indicated, the Forbearance Plan will be declined and all foreclosure activity will resume.

(*Id.*). Among other things, the proposed forbearance agreement included a provision establishing March 25, 2010 as plaintiffs' deadline for accepting Chase's offer:

> March 20, 2010
> Lindsey L. Golliday
> Nicola N. Golliday
>
> Forbearance Plan Agreement
> * * *
> Chase Home Finance LLC is writing in response to your recent request for a Forbearance Plan on the above-referenced account.
>
> All provisions of the Note and security instrument, except as herein provided, shall remain in full force and effect. Upon the breach of any provisions of this Agreement, Chase Home Finance LLC may, at its option and without further notice to you, terminate this Agreement and continue the collection and/or foreclosure proceedings according to the term of the Note and security instrument, without regard to this instrument.
>
> In order for us to continue processing this workout option, we first need to confirm your acceptance of the terms and conditions outlined in this Agreement. To accept this Agreement, please review the following information, sign and date one copy of the enclosed Acknowledgment of Borrower(s), and return it to the address provided below within five (5) days of the date of this letter. The additional copy should be retained for your records.
>
> Please not that this Agreement will not be valid until a signed copy is received by Chase at the address indicated. If the Agreement is not returned, collection and/or foreclosure action will commence or continue.

As of March 20, 2010, your Loan is paid through 090109.  The total amount past due is $8,180.04.

Below we have detailed the proposed payment schedule.

* * *

**Payment Schedule**

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|-----|------|------|-----|
| 01 | 04/01/10 | 1,409.69 | 02 | 05/01/10 | 1,409.69 |
| 03 | 06/01/10 | 1,409.69 | 04 | 07/01/10 | 10,409.50 |

If once the Forbearance Plan begins on your account, you do not meet the terms of this Agreement, please remember Chase Home Finance LLC may, without further notice to you, terminate the Forbearance Plan and continue collection and/or foreclosure proceedings according to the terms of your Note and Mortgage.  After the final payment of the Forbearance Plan, regular payments will become due in addition to any delinquent payments, fees and/or charges.  If your account is not current once the Forbearance period has ended, collection and/or foreclosure activity will resume.

* * *

(*Id.* at ID#s 843-44).  Plaintiffs did not provide written acceptance on or before the March 25, 2010 deadline.  Instead, plaintiffs waited until April 5, 2010, to sign the "Acknowledgment of Borrower(s)." (docket # 60-3 at ID# 845).  On the same day, plaintiffs sent a check by certified mail to Chase in the amount of $1,409.69 (docket # 60-3 at ID# 848). which Chase credited against plaintiffs' outstanding loan balance.  (docket # 60-3, Ex. O, ID# 848).

On April 15, 2010, a notice of foreclosure sale was affixed to the Gollidays' residence 2320 Revelation Ave., Benton Harbor, Michigan.  Notice of the impending May 13, 2010 foreclosure sale was published on April 15, 22, 29 and May 6, 2010.  (docket # 60-3, Ex. P, ID#s 850-51).

On May 6, 2010, plaintiffs filed this lawsuit in state court.  (docket # 1-4, ID#s 75-104).  The last payment of any kind that plaintiffs made towards the debt owed is found in a check dated May 10, 2010, in the amount of $1,409.69.  (docket # 57-3, ID# 686).  On May 19, 2010, plaintiffs filed their amended complaint.  (docket # 1-3, ID#s 8-73).  The amended complaint asks the court to enjoin an allegedly illegal foreclosure sale, to invalidate the assignment to Chase, and

-10-

to award plaintiffs $715,000 in damages.  The discernable charges against Chase are that it illegally serviced plaintiffs' note and mortgage because an assignment was not recorded until April 19, 2010; that Chase illegally serviced plaintiffs' mortgage because it did not possess the original note and mortgage; that defendant's written response to plaintiffs' inquiries violated the Real Estate Settlement Procedures Act and the Truth-In-Lending Act; and that plaintiffs' promissory note was invalidated by fraudulent transactions.

### Discussion

The undisputed record shows that plaintiffs received a loan in excess of $189,000, which they used to purchase their residence.  The loan, made by Gateway, was evidenced by a note and secured by a mortgage.  Plaintiffs do not deny receiving the proceeds of the loan, nor do they deny executing a promissory note and mortgage.  The note was a negotiable instrument under Michigan law, *see* MICH. COMP. LAWS § 440.3104(1); *Northwestern Fin. Co. v. Crouch,* 242 N.W. 771 (Mich. 1932), and Chase has produced evidence that the note was indeed negotiated to it in the year 2009, before this dispute arose.  (docket # 60-2, Ex. H, Reardon Aff. ¶¶ 3-6, ID#s 807, and attachments thereto).  Further, plaintiffs do not dispute that they stopped repaying the loan in October 2009, and with the exception of the April and May 2010 payments, they have been living in their home for almost two years without making loan payments.  Nevertheless, plaintiffs contend that Chase is not the legal holder of the note, that the assignment to Chase violated state and federal law, and that plaintiffs are somehow entitled to damages.  Plaintiffs' claims are based on equal measures of misunderstanding of the law and obstinance.  Defendant is entitled to summary judgment.

-11-

I.      **Mootness**

Plaintiffs filed this lawsuit on May 6, 2010, in an effort to stop the then-impending May 13, 2010 foreclosure sale.  Plaintiffs achieved their tactical objective.  The foreclosure sale did not take place.  Plaintiffs' request for an injunction preventing the May 13, 2010 foreclosure sale is moot.  *See Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir. 2011). As shown below, all plaintiffs' challenges to Chase's ability to proceed with foreclosure are meritless.  There is no legal impediment to Chase proceeding with the foreclosure in any manner permitted by state law.

II.     **Challenges to the Validity of Chase's Interest in the Note and Mortgage**

Plaintiffs raise several challenges to the validity of Chase's interest in the note and mortgage assigned to it.  To the extent that these challenges are intelligible, they lack both legal merit and factual support.

A.      Involvement of MERS

The original loan transaction was structured such that the obligee on the note was Gateway, while the mortgage securing the note was written in favor of MERS, "solely as nominee for Lender" and its successors and assigns.  As noted, MERS is a commercial company that provides to lenders a mortgage recording service.  Mortgage lenders hire MERS to act as their nominee for mortgages, "which allows the lenders to trade the mortgage note and servicing rights. . . . The lender can then sell that note and servicing rights on the market and MERS records each transaction electronically on its files.  When the mortgage loan is repaid, MERS, as agent grantor, conveys the property to the borrower.  MERS represents that this system saves the lender and the consumer the

-12-

transaction costs that would be associated with manually recording every transaction." *Mortg. Elec. Regis. Sys, Inc. v. Nebraska Dep't of Banking and Fin.,* 704 N.W.2d 784, 787 (Neb. 2005).  Over the twenty years that MERS has existed, borrowers who default on their loan obligations have attempted, without success, to attack the validity of the mortgage based on the involvement of MERS.

Plaintiffs in the present case take a page from this now soundly repudiated play book. Reprising a common claim, they assert that the separation of the debt from the security at the time of its creation rendered the transaction void *ab initio.*  This argument is based on a misunderstanding of the general legal principle that a promissory note and the mortgage securing that note are "inseparable," and that one cannot be assigned without the other.  *See, e.g., Kirby Lumber Corp. v. Williams,* 230 F.2d 330, 333 (5th Cir. 1956) (applying Texas law); *Yorke v. Citibank, N.A. (In re BNT Terminals),* 125 B.R. 963, 970 (Bankr. N.D. Ill. 1990) ("It is axiomatic that any attempt to assign the mortgage without transfer of the debt will not pass the mortgagee's interest to the assignee.") (applying Illinois law).  The courts have uniformly held, however, that this "separation" argument is unavailing to mortgagors trying to invalidate a mortgage written in favor of MERS, for the simple reason that there is no separation of the debt from the security.  The debt is held by the lender, and the security is held by the lender's nominee, MERS, as the lender's agent.  The most thorough and cogent analysis of this issue is provided in *Bank of N.Y. v. Raftogianis,* 13 A.3d 435, 447-50 (N.J. Super. Ch. 2010), in which the Chancellor characterizes an argument identical to that of the Golliday's as "creative, but not convincing."  13 A.3d at 448.  Numerous other cases have rejected attempts to invalidate MERS mortgages on this theory.  *See, e.g., Jada v. Wells Fargo Bank, N.A.*, No. CV-10-2164, 2011 WL 3267330, at * 3 (D. Ariz. July. 29, 2011) ( "Therefore

-13-

MERS can only exercise its rights as beneficiary under the deed of trust for the benefit of either the original lender or its subsequent successors and assigns.  To the extent it does so, the beneficial interest in the deed of trust has not been separated from the lender or its successors, and no assignment by MERS is invalid."); *Silving v. Wells Fargo Bank, N.A.,* __ F. Supp. 2d __, 2011 WL 2669246, at * 9 (D. Ariz. July 7, 2011); *Knox v. Trott & Trott, P.C.*, *No. 10-13175,* 2011 WL 1540340, at * 4 (E.D. Mich. April 21, 2011) (collecting cases); *Suss v. JP Morgan Chase Bank, N.A.,* No. WMN-09-1627, 2010 WL 2733097, at * 5 (D. Md. July 9, 2010) ("As to Plaintiff's criticism of MERS, courts that have considered the issue have found that the system of recordation is proper and assignments made through that system are valid.") (collecting cases).[5]

Plaintiffs' contention that the mortgage was void *ab initio* is based on a fundamental misunderstanding of the law and should be rejected.

B.    Chase's Chain of Title

Plaintiffs next allege that defendant Chase has failed to establish clear chain of title. (docket # 57, ID# 632).  Plaintiffs have provided no meaningful evidence to establish this contention. In response, defendant Chase has produced the closing original documents for inspection by plaintiffs and has filed attested copies of the documents assigning the note and the mortgage to Chase.  (ID#s 806-11, 840).  Plaintiffs rely on the unsupported accusation that these documents are fabrications, although they have admitted that the supposed forgeries are identical to the copies

---

[5]Some of these courts, including the Michigan Court of Appeals, have denied MERS the power to foreclose the mortgage by advertisement, because of the requirements of statutory law.  *See, e.g., Bakri v. Mprtg. Elec. Regis. Sys.,* No. 297962, 2011 WL 3476818 (Mich. Ct. App. Aug. 9, 2011).  None of them has held, however, the mortgage itself was invalid.  These courts merely require that the foreclosure be brought by the note holder, which, of course, is precisely what occurred in this case.  (*See* section III below).

retained by plaintiffs.  The documents submitted by plaintiffs in support of their position (docket #
57, Promissory Note, ID#s 663-65; Mortgage, ID# 652-60) are verbatim duplicates of the documents
relied on by Chase.  (docket # 60, ID#s 773-76; 780-88).[6]  Plaintiffs admitted in court that they have
not been contacted by any other bank demanding payment.

A moving party's initial burden on a motion for summary judgment includes
"identifying the portions of the 'pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any,' which it believes demonstrate the absence of a material
fact."  *Am. Civil Liberties Union of Ohio Found., Inc. v. Deweese*, 633 F.3d 424, 428 (6th Cir. 2011)
(quoting *Celotex*, 477 U.S. at 323).  Defendant Chase has met its initial burden by providing
extensive documentation establishing a clear chain of title.  The burden then shifts to plaintiffs to
produce some evidence that there exists a genuine issue of fact to be tried.  Plaintiffs have produced
nothing, but rather made the mistake of relying on their allegations alone, which, in any event, are
nebulous and conclusory.  Plaintiffs allege the documents in defendant's possession are forgeries,
but admit that they are identical to the genuine articles, and, furthermore, comparison of the
documents bears out this conclusion.  Plaintiffs do not allege that there is another party in contention
for ownership of their loan.

---

[6]Plaintiffs waste much of their brief on frivolous arguments that their copies of the closing
documents did not have signatures identical to "wet ink" originals they signed at closing.  As the
court explained in an earlier order, "By definition a 'true copy' is not an original, but a conformed
copy of the original.  Therefore, the existence of minor variations in the appearance of signatures
proves nothing."  (docket # 49, 12/06/10 Order at 2).

C.      Validity of Allonge

In addition to challenging the original note and mortgage as forgeries, plaintiffs also challenge the validity of the allonge used for purposes of assigning the note to Chase. An allonge is a slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further endorsements when the original paper is filled with endorsements. BLACK'S LAW DICTIONARY, 88 (9th ed. 2009). The basis for plaintiffs' argument is the majority rule, under which an allonge may be used for assignment only if there is insufficient space remaining on the original document. Michigan, however, does not follow the majority rule. *See* MICH. COMP. LAWS § 440.3204(1) ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."). On the basis of this provision of the Michigan UCC, the courts have rejected identical arguments by parties challenging the validity of an allonge on this ground. *See, e.g., Livonia Properties Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 733 (E.D. Mich.) ("[R]egardless of any purported majority rule, an Allonge affixed to a Note effectively negotiates the instrument without regard to space remaining on the original instrument.") (applying Michigan law), *aff'd*, 399 F. App'x 97 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1696 (2011).

Plaintiffs have failed to come forward with admissible proof sufficient to raise a triable issue of fact concerning the validity of Chase's title to the note and mortgage. On the present record, no reasonable trier of fact could conclude that Chase is not the holder of the mortgage note or that any of the documents that Chase relies on is a forgery.

### III.    Legitimacy of Foreclosure

Plaintiffs also challenge the legitimacy of the foreclosure proceedings initiated at defendant's behest.  Plaintiffs' theory rests on the misconception that MERS was the party initiating the foreclosure.  Defendant has provided documentation that MERS assigned its interest as mortgagee and nominee to Chase before foreclosure proceedings were started.  (docket # 60-3, Ex. M, ID# 840).  This transaction was dated March 24, 2010, and recorded April 19, 2010.  (*Id.*).  The evidence proves that Chase was the last mortgagee of record and therefore was entitled to foreclose by advertisement.[7]  *See Arnold v. DMR Fin. Servs. Inc.*, 532 N.W.2d 852, 855-56 (Mich. 1995).

Plaintiffs seek refuge in a relatively new Michigan Court of Appeals decision, *Residential Funding Co. v. Saurman*, Nos. 290248, 291443, __ N.W.2d __, 2011 WL 1516819 (Mich. Ct. App. Apr. 21, 2011).  *Saurman*  stands for the proposition that MERS cannot initiate a foreclosure by advertisement under Michigan law, because it is not one of the entities identified as having such authority by the foreclosure statute, MICH. COMP. LAWS § 600.3204.   This is because MERS holds only the mortgage, and is therefore neither the owner of the indebtedness nor the servicing agent, both of which are empowered to foreclose by advertisement.  *Saurman,* 2011 WL 1516819.   The short answer to this argument is that MERS did not initiate the foreclosure proceedings against plaintiffs' property.  By the time that Trot and Trott published the first advertisement for foreclosure (April 15, 2010), MERS had already assigned all its "right, title and

---

[7] "Foreclosure sales by advertisement are defined and regulated by statute.  Once the mortgagee elects to foreclose a mortgage by this method, the statute governs the prerequisites of the sale notice of foreclosure and publication, mechanisms of the sale, and redemption."  *Arnold*, 532 N.W.2d at 855.  The court can only adjudicate the regularity of the foreclosure proceedings as they have occurred.  Plaintiffs have challenged the foreclosure proceedings in their infancy, and have failed to prove their case.  I find no defect in the foreclosure proceedings as they have occurred to date.

interest" in the mortgage to Chase (docket # 60-3, Assignment of Mortgage, dated March 24, 2010, ID# 840). In contrast to the situation in *Saurman,* the foreclosure by advertisement here was initiated by the party that held the indebtedness, serviced the mortgage, and owned the complete interest in the indebtedness, rather than by MERS. In sum, plaintiffs have failed to provide any evidence of irregularity with the foreclosure proceedings to date, and all claims based on alleged improprieties are meritless. There is no legal or factual basis for quieting plaintiffs' title to property securing the debt plaintiffs owe. *See Jaboro v. Wells Fargo Bank, N.A.*, No. 10-11686, 2010 WL 5296939, at * 6-7 (E.D. Mich. Dec. 20, 2010).

## IV.   Violation of Federal Lending Laws

Plaintiffs also allege violations of federal law in the form of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq*., and the Truth-in-Lending Act (TILA) 15 U.S.C. §§ 1601, *et seq*. These allegations are premised on the supposed inadequacy of defendant's response to plaintiffs' Qualified Written Request. (docket # 1-3, ID# 10, ¶ 8) ("Chase Home Finance's response was incomplete and has violated the Real Estate Settlement Procedures Act and the Truth-In-Lending Act requirements."). The expansive nature of plaintiffs' Qualified Written Request and the dubious legal support for the claims of inadequacy suggest that plaintiffs' goal from the outset was to prompt a response from defendant that they could later characterize as "inadequate" in order to create, or extort, a favorable outcome.

Plaintiffs specifically allege a violation of 12 U.S.C. § 2605(e), which requires a loan servicer to acknowledge a qualified written request within 20 days, and respond within 60 days with the requested information, or state reasons why that information is unavailable. In this case,

defendant responded within the correct period of time. Plaintiffs only contest that defendant's response was "incomplete." Under the statute, a qualified written request is a written correspondence that both identifies the account and includes the borrower's reasons for believing that the account is in error. 12 U.S.C. § 2605(e)(1)(B)(ii). Contrary to plaintiffs' assumption, the Act does not require a servicer to answer endless interrogatories propounded by a borrower. Rather, the Act requires only that the servicer make appropriate correction to anything found in error, or provide a statement of the reasons why the servicer believes the account is correct or why the requested information is not available. *Id* at § 2605(e)(2); *see Roller v. Litton Loan Servicing*, No. 10-13847, 2011 WL 2490597, at * 5 (E.D. Mich. June 21, 2011). Plaintiffs' extensive interrogatories (docket # 60-3, ID#s 813-32) went well beyond the scope of anything authorized by RESPA, and Chase's response (*Id.* at ID#s 836-38) was more than adequate to meet its statutory obligations.

Even if plaintiffs were able to demonstrate the inadequacy of defendant's response, which they have not, they have failed to demonstrate actual damages stemming from that failure. *See Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 795 (E.D. Mich. 2010) ("Even if the Court were able to conclude that Plaintiff has adequately alleged that Defendant's responses were somehow inadequate, Plaintiff's RESPA claim fails for the additional reason that Plaintiff has alleged no actual damages attributable to Defendant's alleged failure to respond."); *see also Sitanggang v. Countrywide Home Loans, Inc.*, 419 F. App'x 756, 757 (9th Cir. 2011); *Pennington v. EquiFirst Corp.*, No. 10-1344, 2011 WL 2413520, at * 4 (D. Kan. June 10, 2011) (collecting cases); *Kevelighan v. Trott & Trott, P.C.*, No. 09-12543, 2011 WL 2076336, at * 4 (E.D. Mich. May

26, 2011).  Plaintiffs have provided no evidence of  harm, nor evidence establishing a causal link

between said harm and the defendant.  Plaintiff has failed to establish an actionable RESPA claim.

Plaintiffs' case for a 15 U.S.C. § 1601 (TILA) violation is equally groundless.  It is

appropriate to begin by noting that, as with the unsubstantiated RESPA claim, plaintiffs have neither

articulated nor provided any evidence as to the substance of their purported TILA claim.  Plaintiffs

merely indicate that Chase's response to their inquiries was "incomplete."  This does not suffice to

state a claim under TILA.  *See e.g.*, *Langley v. Chase Home Fin. LLC*, No. 1:10-cv-604, 2011 WL

1150772, at * 5-6 (W.D. Mich. Mar. 11, 2011).  However, assuming arguendo that plaintiffs had

made proper factual allegations and provided some showing of evidence, an exhaustive evaluation

of whether defendant committed a TILA violation is unnecessary.  Here, plaintiffs failed to make

their claim in a timely fashion.  Plaintiffs seeking damages for a TILA violation must initiate suit

within one year of the alleged violation.  15 U.S.C. § 1640(e).

> TILA liability arises when a creditor fails to make the required disclosures "before
> consummation of the transaction" (Reg. § 226.17(b)), defined as "the time that a
> consumer becomes contractually obligated on a credit transaction" (Reg. §
> 226.2(a)(13)).  Thus "consummation" occurs when a borrower signs the loan
> documents and becomes obligated to pay, despite the fact that the loan may be
> contingent on the lender's approval.

*United States v. Petroff-Kline,* 557 F.3d 285, 296 (6th Cir. 2009).  Here, plaintiffs' claim under TILA

accrued the moment they signed the relevant promissory note and mortgage.  *Golliday v. First Direct*

*Mortg. Co.*, No. 09-cv-256, 2009 WL 5216141, at * 5 (W.D. Mich. Dec. 29, 2009); *see White v. Sky*

*Bank/Huntington Nat'l Bank*, No. 4:11cv 259, 2011 WL 1398072, at * 2 (N.D. Ohio Apr. 12, 2011).

Plaintiffs filed their complaint on March 6, 2010, one year, five months and eleven days after they

signed their contract on November 25, 2008.  I find that plaintiffs' TILA claims are barred by the statute of limitations.

### V.       Breach of Proposed Forbearance Agreement

Plaintiffs allege that defendant committed a breach of contract by initiating foreclosure proceedings in violation of a forbearance agreement.  The forbearance agreement offered by Chase was never accepted by plaintiffs before it expired.  The proposed agreement never went into effect.  *See  Kogelshatz v. Gendernalik Funeral Homes, Inc.,* No. 293977, 2010 WL 4628678, *7 (Mich. Ct. App. 2010) ("Without an unambiguous acceptance in strict conformance with the offer, no contract is formed."); *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 769 (Mich. Ct. App. 2006).  Plaintiffs missed the March 25, 2010 deadline for acceptance of Chase's offer.  (docket # 60-3 at ID# 843).  Chase's offer was not revived by a belated return of the Acknowledgment of Borrower(s) and a payment made after the applicable deadline.  The terms of the offer were clear. It is beyond the power of the courts to employ judicial construction of the terms; this court can only enforce them, so long as they are unambiguous.  *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005).  Whether the court considers these terms to be reasonable is irrelevant.  *Id.*; *Dawson v. Farm Bureau Ins. Co. of Mich.*, No. 296760, __ N.W.2d __, 2011 WL 3587387 (Mich. Ct. App. Aug. 16, 2011); *see Reardon v. Kelly Services, Inc.*, 210 F. App'x 456, 459 n.4 (6th Cir. 2006) ("A court may consider whether a proposed reading of a contract's language is a reasonable interpretation of the text.  Once the meaning of a contractual provision is discerned, however, the court is generally forbidden from considering whether the results of contract enforcement would be 'reasonable.'"); *Flowers Nat'l Bank v. Lodge Ventures, Inc.*, No. 10-cv-14617, 2011 WL 3511501, at * 2 (E.D. Mich.

Aug. 10, 2011).  The proposed forbearance agreement never went into effect, and it could not be breached by Chase.

Even assuming *arguendo* that a forbearance contract had been formed, plaintiffs immediately breached it by being late with their first payment.[8]  The proffered agreement clearly states that, if created, the agreement would be invalidated without further notice if plaintiffs did not comply with the terms of payment.  (docket # 60-3 at ID# 844).  The terms included timely delivery of payments at the listed dates, the first of which was set at April 1, 2010.  (*Id.* at ID# 842). Plaintiffs mailed their check on April 5, 2010, four days after the payment deadline had passed. Thus, if the forbearance agreement had ever been in effect, it was immediately breached and terminated, albeit without notice, by plaintiffs' failure to abide by its terms.

---

[8]Plaintiffs state that they have a recorded message from a "Chase representative" who purportedly stated that plaintiffs could make payments up to ten days late without breaching the proposed forbearance agreement.  (Plf. Brief at 12, 26-27).  It is well established that statements appearing in a party's brief are not evidence.  *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).   Plaintiffs have not submitted the purported recording, nor any other evidence that they received such an assurance.

**Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiffs' request for an injunction against the May 13, 2010 foreclosure sale be dismissed as moot. I further recommend that plaintiffs' motion for summary judgment (docket # 57) be denied. I further recommend that defendant's motion for summary judgment (docket # 60) be granted and that a final judgment be entered in Chase's favor on all plaintiffs' claims.


Dated:   August 23, 2011                    /s/  Joseph G. Scoville
                                            United States Magistrate Judge


**NOTICE TO PARTIES**


Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).